*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

**UNITED STATES**
Appellee

**v.**

**Djoulou K. CALDWELL, Sergeant First Class**
United States Army, Appellant

**No. 16-0091**
Crim. App. No. 20140425

Argued February 24, 2016—Decided May 16, 2016

Military Judges: David L. Conn and Robert A. Cohen

For Appellant: *Captain Scott A. Martin* (argued); *Lieutenant Colonel Jonathan F. Potter* and *Captain Heather L. Tregle* (on brief); *Lieutenant Colonel Charles D. Lozano.*

For Appellee: *Captain Scott L. Goble* (argued); *Colonel Mark H. Sydenham* and *Major John K. Choike* (on brief); *Major Daniel D. Derner.*

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN, Judges STUCKY and RYAN, and Senior Judge COX, joined.

_____

Judge OHLSON delivered the opinion of the Court.

Contrary to his pleas, a panel of officer and enlisted members sitting as a general court-martial convicted Appellant, in relevant part, of maltreatment in violation of Article 93, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 893 (2012). We granted review to determine whether the military judge's instructions were plainly erroneous in light of the Supreme Court's recent holding in *Elonis v. United States*, 135 S. Ct. 2001 (2015). Based on the two factors outlined below, we conclude they were not.

First, because of the unique nature of the offense of maltreatment in the military, a determination that the Government is only required to prove general intent in order to obtain a conviction under Article 93, UCMJ, satisfies the key principles enunciated by the Supreme Court in *Elonis*. Se-

cond, the military judge's instructions sufficiently flagged for the panel the need to consider this general intent mens rea requirement when determining the guilt or innocence of the accused. We therefore conclude that the instructions were not plainly erroneous as a matter of law. As a result, we affirm the decision of the United States Army Court of Criminal Appeals.

## I. BACKGROUND

Appellant, a sergeant first class in the United States Army, was accused of maltreating a subordinate, Specialist CH, with whom he worked. The evidence adduced at trial showed that Appellant was "nice at first" to CH, but later began to conduct himself inappropriately. Specifically, Appellant began by making gestures that CH understood to be sexual in nature, such as "look[ing her] body up and down" and "lick[ing] his lips." The situation further deteriorated when Appellant inappropriately touched CH on more than one occasion when they were stationed together in Afghanistan. For example, CH testified that Appellant brushed his hand against her "behind" while she was walking through a narrow hall and on another occasion rubbed her vaginal area and inner thigh with his hand. In another instance, Appellant walked past CH's desk and "made a comment about how [her] ass looked in [her] multi-cam uniform." CH testified that she did not respond to this comment because she "just wanted it to go away" and was "a little intimidated … because he was a senior NCO."

Appellant continued his abusive conduct upon the unit's return to the United States. CH testified that Appellant approached her while she was on staff duty and, after seeing a slightly revealing photo on her phone, stated that he "could do things to [her] to make [her] fall in love with him."

On September, 3, 2013, CH reported Appellant's conduct in a statement given to the Army's Criminal Investigation Division. After an investigation, Appellant was charged with maltreatment of CH under Article 93, UCMJ, as well as abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012).

Appellant was tried by a panel of officer and enlisted members sitting as a general court-martial. At trial, the mil-

itary judge instructed the panel on the elements of maltreatment:[1]

> In order to find [Appellant] guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt:
>
> One, that at the time of the alleged conduct, [CH] was a person subject to the orders of [Appellant]; and
>
> Two, that on divers occasions between on or about 1 June 2011 and on or about 1 September 2012, … the accused maltreated [CH] by stating: "I just wanted to see your ass when you walked out of the office." "I could make you fall in love with me," or words to that effect, and by licking his lips while leering at [CH].

The military judge then defined "maltreatment" to the panel:

> [M]altreatment must be real, although it does not have to be physical. The imposition of necessary or proper duties on a Servicemember and the requirement that those duties be performed does not establish this offense even though the duties are hard, difficult, or hazardous.
>
> "Maltreated" refers to treatment, when viewed objectively under all the circumstances, [that] is abusive or otherwise unwarranted, unjustified, and unnecessary for any lawful purpose and that results in physical or mental harm or suffering, or reasonably could have caused, physical or mental harm or suffering.

The military judge further instructed that "[a]ssault or sexual harassment may constitute this offense," explaining what qualifies as sexual harassment:

> Sexual harassment includes influencing, offering to influence, or threatening the career, pay, or job of

---

[1] The military judge's instructions were all taken directly from the Benchbook. *See generally* Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook, ch. 3, para. 3-17-1 (2014).

another person in exchange for sexual favors. Sexual harassment also includes deliberate or repeated offensive comments or gestures of a sexual nature. For sexual harassment to also constitute maltreatment, the accused's conduct must, under all of the circumstances, constitute "maltreatment" as I have defined that term for you.

Finally, the military judge instructed the panel that "[a]long with all other circumstances, you must consider[] evidence of the consent or acquiescence of [CH]." "The fact that [CH] … may have consented or acquiesced[] does not alone prove that she was not maltreated …." "[B]ut," the military judge went on, "[consent or acquiescence] is one factor to consider in determining whether the accused maltreated [CH]."

Contrary to his pleas, Appellant was convicted of maltreatment of a subordinate in violation of Article 93, UCMJ, and abusive sexual contact in violation of Article 120, UCMJ.[2] He was sentenced to reduction to E-1 and a bad-conduct discharge. The convening authority approved the sentence as adjudged, and the Army Court of Criminal Appeals summarily affirmed. Appellant subsequently petitioned this Court and we granted review of the following issue:

> Whether the military judge committed plain error when he instructed the panel using a negligence standard for maltreatment of a subordinate in violation of Article 93.

## II. ANALYSIS

Article 93, UCMJ, proscribes "cruelty toward, or oppression or maltreatment of, any person subject to [an accused's] orders." We have stated that the elements of this general intent offense are: (1) "[t]hat a certain person was subject to the orders of the accused"; and (2) "[t]hat the accused was cruel toward, or oppressed, or maltreated that person." *Manual for Courts-Martial, United States* pt. IV, para. 17.b (2012 ed.) (*MCM*); *accord United States v. Dear*, 40 M.J. 196,

---

[2] This charge is not germane to the present appeal and therefore is not discussed further.

197 (C.M.A. 1994) (citation omitted); *see generally United States v. Hanson*, 30 M.J. 1198, 1201 (A.F.C.M.R. 1990) ("Maltreatment is a general intent crime."), *aff'd* 32 M.J. 309, 309 (C.A.A.F. 1991) ("[T]he decision of the United States Air Force Court of Military Review is affirmed for the reasons stated therein.") (summary disposition). Importantly, "[such] cruelty, oppression, or maltreatment … must be measured by an objective standard." *MCM* pt. IV, para. 17.c.(2). Moreover, such conduct need not result in actual harm to the victim—either mental or physical—because "[t]he essence of the offense is abuse of authority." *United States v. Carson*, 57 M.J. 410, 415 (C.A.A.F. 2002). Key to a court's inquiry are "the specific facts and circumstances of [a given] case" or, stated differently, the fact finder must conduct "an objective evaluation of the totality of the circumstances." *Id.*

Questions pertaining to the substance of a military judge's instructions, as well as those involving statutory interpretation, are reviewed de novo. *United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008); *United States v. Smith*, 50 M.J. 451, 455 (C.A.A.F. 1999). Appellant argues that the military judge erred in instructing the panel at his court-martial. Specifically, he avers that the military judge's instructions, cited above, predicate liability on mere negligence and therefore violate the principles set forth in *Elonis*. For the reasons cited below, we disagree.[3]

### A. In the context of a maltreatment offense under Article 93, UCMJ, general intent sufficiently separates lawful conduct from unlawful conduct

It is a fundamental principle of criminal law that "'wrongdoing must be conscious to be criminal.'" *United*

---

[3] In reaching this conclusion, we specifically reject the Government's position that "*Elonis* is limited to the interpretation of a federal statute for communicating a threat." True, *Elonis* interpreted 18 U.S.C. § 875(c), which deals only with the communication of threats, but the Supreme Court's holding was based on general "rule[s] of construction" and "basic principle[s]" underlying the common law. *See Elonis* 135 S. Ct. at 2009–11. We therefore conclude that the holding in *Elonis* has far broader implications than the Government acknowledged in its briefs in this case.

*States v. Rapert*, 75 M.J. 164, 167 n.6 (C.A.A.F. 2016) (quoting *Elonis*, 135 S. Ct. at 2009).[4] Stated differently, the general rule is that a guilty mind is "a necessary element in the [charge sheet] and proof of every crime." *United States v. Balint*, 258 U.S. 250, 251 (1922). Indeed, the Supreme Court has held that even when a mens rea[5] requirement is not explicitly included in a criminal statute, that does not necessarily mean that such a requirement can be "dispens[ed] with." *Morissette v. United States*, 342 U.S. 246, 250 (1952). Rather, generally speaking, criminal statutes should be interpreted by courts as still including "broadly applicable [mens rea] requirements, even where the statute … does not contain them."[6] *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994). However, in inferring a mens rea requirement in a statute that is otherwise silent, courts must only read into the statute "that mens rea which is necessary to separate" wrongful conduct from innocent conduct. *Carter v. United States*, 530 U.S. 255, 269 (2000); *accord Rapert*, 75 M.J. at 167 n.6; *see also Elonis*, 135 S. Ct. at 2010.

Importantly, in some instances, the mere requirement in a statute that a defendant commit an act with knowledge of certain facts—i.e., that the defendant possessed "general intent"—is enough to ensure that innocent conduct can be separated from wrongful conduct. This circumstance is best captured by the facts of *Carter v. United States*. There, the Supreme Court considered whether a conviction under 18 U.S.C. § 2113(a), which criminalizes taking "by force and violence" items of value belonging to or in the care of a bank, requires proof of intent to steal. *Carter*, 530 U.S. at 261. The Supreme Court held that once the Government proves that a

---

[4] This does not mean that an accused must know that his actions constitute criminal conduct. Rather, an accused must have knowledge of "the facts that make his conduct fit the definition of the offense." *Staples v. United States*, 511 U.S. 600, 607 n.3 (1994).

[5] "Mens rea" is the Latin term for "guilty mind" and refers to "[t]he state of mind that the prosecution … must prove that a defendant had when committing a crime." *Black's Law Dictionary* 1134 (10th ed. 2014).

[6] Such an inference of a mens rea requirement by a court is not merited when there is an "indication of congressional intent" to the contrary. *Staples*, 511 U.S. at 606.

defendant forcibly took money, "the concerns underlying the presumption in favor of scienter are fully satisfied, for a forceful taking—even by a defendant who takes under a good-faith claim of right—falls outside the realm of … 'otherwise innocent'" conduct. *Id.* at 269–70. Thus, the Supreme Court held, the general intent requirement contained in the statute was sufficient. We conclude that the same reasoning applies in the instant case.

In analyzing this issue, we hold that in order to obtain a conviction under Article 93, UCMJ, the Government must prove that: (a) the accused *knew* that the alleged victim was subject to his or her orders; (b) the accused *knew* that he or she was making statements or engaging in certain conduct in respect to that subordinate; and (c) *when viewed objectively under all the circumstances*, those statements or actions were unwarranted, unjustified, and unnecessary for any lawful purpose and caused, or reasonably could have caused, physical or mental harm or suffering.

We conclude that there is no scenario where a superior who engages in the type of conduct prohibited under Article 93, UCMJ, can be said to have engaged in innocent conduct. We base our conclusion on the unique and long-recognized importance of the superior-subordinate relationship in the United States armed forces, and the deeply corrosive effect that maltreatment can have on the military's paramount mission to defend our Nation.

As both this Court and the Supreme Court recognized long ago: "'[T]he military must insist upon a respect for duty and a discipline without counterpart in civilian life. The laws and traditions governing that discipline have a long history [and] are founded on unique military exigencies as powerful now as in the past.'" *United States v. Heyward*, 22 M.J. 35, 37 (C.M.A. 1986) (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975)). Unlike his civilian counterparts, "'it is [the servicemember's] primary business … to fight or be ready to fight wars should the occasion arise.'" *Parker v. Levy*, 417 U.S. 733, 744 (1974) (quoting *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17 (1955)). In order to achieve this objective, "[n]o question can be left open as to the right to command [by a superior], or the duty [to obey by a subordinate]." *In re Grimley*, 137 U.S. 147, 153

(1890); *accord Goldman v. Weinberger*, 475 U.S. 503, 507 (1986) (noting that "the military must foster instinctive obedience"). The very lifeblood of the military is the chain of command. *United States v. Priest*, 21 C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972) ("The armed forces depend on a command structure that at times must commit men [and women] to combat, not only hazarding their lives but ultimately involving the security of the Nation itself.").

A corollary to the principle that subordinates must obey their superiors is the principle that superiors must not maltreat their subordinates. The essence of this latter principle is captured by the provisions of Article 93, UCMJ, which has sought to preserve the integrity of the superior-subordinate relationship. *See United States v. Dickey*, 20 C.M.R. 486, 488 (A.B.R. 1956) (noting that Article 93, UCMJ, finds root in Article 8 of the Articles for the Government of the Navy, which sought to curb "officers maltreating enlisted men aboard ship"); *see also United States v. Finch*, 22 C.M.R. 698, 701 (N.B.R. 1956). It is for this reason we have held that criminal liability for maltreatment does not depend on whether conduct actually effects a harm upon the victim, and that "[t]he essence of the offense [of maltreatment] is abuse of authority." *See, e.g.*, *Carson*, 57 M.J. at 415.

Ultimately, then, we are faced with a situation far more similar to *Carter* than *Elonis*. Just as an individual who possesses the general intent to take money from a bank by force can be held criminally responsible for his conduct even if the Government does not prove that the individual possessed the intent to actually steal the money, so too can a military superior be held criminally responsible for voluntary conduct that is later determined to be "abusive or otherwise unwarranted, unjustified, and unnecessary for any lawful purpose," even if the Government does not prove that the superior possessed the specific intent to maltreat. The key question is whether the superior possessed general intent to offer the statements, or undertake the conduct, that either caused or could have caused suffering.[7] *Cf. Carter*, 530 U.S. at 269–70.

---

[7] This of course would not prevent a defense based on a genuinely held, reasonable mistake of fact. *See* Rule for Courts-Martial

Abusive conduct that is *consciously* directed at a subordinate is in no sense lawful. This behavior undermines the integrity of the military's command structure, and as we have repeatedly recognized in the context of dangerous speech in the armed forces, "[t]he hazardous aspect of license in this area is that the damage done may not be recognized until the battle has begun."[8] *Priest*, 21 C.M.A. at 571, 45 C.M.R. at 345. We therefore conclude that general intent sufficiently separates lawful and unlawful behavior in this context, and there is no basis to intuit a mens rea beyond that which we have traditionally required for Article 93, UCMJ.

### B. Maltreatment instructions

Having determined that, in the context of Article 93, UCMJ, the application of a general intent mens rea requirement adequately separates lawful conduct from unlawful conduct, we next turn our attention to the granted issue of whether the military judge in the instant case committed plain error by instructing the panel using a negligence standard. The answer, we conclude, is no.

Even though the relevant instructions were less-than-explicit with respect to mens rea, we do not find a sufficient basis to conclude that the military judge's instructions were erroneous in light of their proper emphasis on general intent. Therefore, Appellant fails to meet the burden imposed

---

(R.C.M.) 916(j)(1); *see also United States v. Zachary,* 63 M.J. 438, 442 (C.A.A.F. 2006) ("[A]n honest and reasonable mistake of fact can negate the mens rea requirement to a general intent crime.").

[8] Indeed, in the context of freedom of speech in the military, we note that servicemembers do not possess the same broad rights of expression that civilians enjoy. *See generally Parker*, 417 U.S. at 758. This principle holds true even in regard to interactions between superiors and subordinates. The armed forces have the authority to ensure that servicemembers conduct themselves with the level of respect, obedience, and decorum that is required in furtherance of the effective execution of the military mission. Thus, a superior who voluntarily engages in objectively abusive conduct towards a subordinate cannot be heard to complain that his actions were protected by his freedom of speech, or that his actions were lawful in any other sense.

by the first prong of our plain error analysis. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014) ("Under a plain error analysis, [Appellant] has the burden of demonstrating that: (1) there was error; (2) the error was plain and obvious; and (3) the error materially prejudiced a substantial right …." (internal quotation marks omitted) (quoting *United States v. Tunstall*, 72 M.J. 191, 193–94 (C.A.A.F. 2011)).

In this case, the military judge defined maltreatment as action that "when viewed objectively under all the circumstances": (a) is "abusive or otherwise unwarranted, unjustified, and unnecessary for any lawful purpose"; and (b) "results in physical or mental harm or suffering, or reasonably could have caused, physical or mental harm or suffering." The military judge also explained that Article 93, UCMJ, imposes liability for conduct that constitutes "[a]ssault or sexual harassment," defining sexual harassment as "influencing, offering to influence, or threatening the career, pay, or job of another person in exchange for sexual favors," and further noting that "[s]exual harassment also includes deliberate or repeated offensive comments or gestures of a sexual nature." "For sexual harassment to … constitute maltreatment," the military judge went on, "the accused's conduct must, under all of the circumstances, constitute 'maltreatment' as [was previously] defined."

Because the military judge repeatedly made clear that the panel members were required to consider Appellant's conduct "under all the circumstances," these instructions can reasonably be understood as requiring the panel members to determine whether Appellant *knew* that the alleged victim was subject to his orders and *knew* that he was making statements or was engaging in other conduct in respect to that alleged victim, i.e., whether Appellant possessed the requisite general intent mens rea.[9] *See generally United*

---

[9] Case-specific circumstances that bear on an accused's general intent have always been relevant to a properly conducted maltreatment inquiry. The facts of *United States v. Piatt* 17 M.J. 442 (C.M.A. 1984), are instructive in this respect. There, the appellant had been convicted of maltreatment and assault on the basis that he instructed two of his subordinates, whom he designated as his "thumpers," that he would tell other privates to "make a headcall" and that they too were to go into the head and

*States v. Bailey*, 444 U.S. 394, 403 (1980) (explaining that "[i]n a general sense, … 'knowledge' corresponds loosely with the concept of general intent"). Accordingly, we do not find a sufficient basis to conclude that the military judge's instructions were erroneous.[10] *Payne*, 73 M.J. at 22.

---

should "not … leave any bruises." *Id.* at 444 (internal quotation marks omitted). According to the appellant, "he understood a 'thumper' to be a person who *verbally* counsels a recruit to improve his performance, but does not employ physical force." *Id.* at 446–47 (emphasis added). The appellant therefore attempted to introduce evidence as to "the common understanding of the term … in the [appellant's] Company." *Id.* at 446. But the military judge refused to allow this testimony, and the appellant was convicted and his sentence affirmed on appeal. *Id.* We reversed. "[T]he critical [issue] before the members was [the] appellant's *state of mind* at the time he caused [his subordinates] to assault and maltreat the victims." *Id.* at 447 (emphasis added). Thus, the Court went on, "the [crucial] question was whether appellant *knew* that [his subordinates] understood 'thumper' to be a person who exercises physical force on another." *Id.* at 446 (emphasis added). If this term was commonly understood to mean a person who verbally—not physically—counsels a recruit, it "could … add some credence to [the appellant's] implied assertion that he honestly believed [the subjects of his orders] shared this … understanding." *Id.* at 447. On this basis, we concluded that such evidence was "clearly relevant" to the offense and held that the military judge's decision to exclude was prejudicial error. *Id.*

[10] It is of little concern in the instant case that the instructions made no reference to a mistake of fact defense. It is true that an honest and reasonable mistake of fact is a defense to general intent crimes—maltreatment included. *See, e.g., Piatt*, 17 M.J. at 446 (noting that "an honest and reasonable mistake instruction … would have been … appropriate" for the maltreatment charge); *see also Zachary*, 63 M.J. at 442; R.C.M. 916(j)(1). Importantly, however, a military judge only carries a sua sponte duty to instruct on a special defense where it is "reasonably raised by the evidence." *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000). No such defense was raised by the evidence in Appellant's case. *See id.* (noting that a defense is reasonably raised when "the record contains some evidence to which the court members may attach credit if they so desire"). Therefore, the military judge's omission of this point was not error.

### C. Best practices going forward

There is little doubt that, as the Supreme Court has noted, "[f]ew areas of criminal law pose more difficulty than the proper definition of the *mens rea* required for any particular crime." *Bailey*, 444 U.S. at 403. Therefore, we deem it appropriate to provide some guidance regarding how military judges, going forward, should instruct panels about the mens rea requirement for violations of Article 93, UCMJ.

General intent requires "knowledge with respect to the *actus reus*[11] of the crime." *Carter*, 530 U.S. at 268; *see also Bailey*, 444 U.S. at 403 (explaining that "[i]n a general sense, … 'knowledge' corresponds loosely with the concept of general intent"). In the context of maltreatment, this actus reus—that is, the "guilty act"—is the underlying, inappropriate conduct. *See Carson*, 57 M.J. at 415 ("The essence of the offense is abuse of authority."). Thus, a well-constructed maltreatment instruction should not merely refer to general intent implicitly—i.e., through the invocation of the phrase "under all the circumstances." Rather, going forward, a military judge's instructions (in concert with the Benchbook's approach) should more clearly and explicitly state that in order for an accused to be convicted of maltreatment under Article 93, UCMJ, the Government must have proven that: (a) the accused knew that the alleged victim was subject to his or her orders; (b) the accused knew that he or she made statements or engaged in certain conduct in respect to that subordinate; and (c) when viewed objectively under all the circumstances, those statements or actions were abusive or otherwise unwarranted, unjustified, and unnecessary for any lawful purpose and caused, or reasonably could have caused, physical or mental harm or suffering.[12]

---

[11] *See generally Black's Law Dictionary* 44 (10th ed. 2014) (defining "actus reus" as "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability").

[12] It bears repeating that this is not to say that the accused must have known that a reasonable person would conclude that his or her conduct was abusive. Instead, this prong requires consciousness of the underlying action—i.e., the words being offered or the action being undertaken. *See Carter*, 530 U.S. at 268 (not-

We conclude that a clarified instruction of this nature will lead to a better informed panel, the value of which cannot be overstated in the military justice system.

## III. DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

ing that general intent requires "knowledge with respect to the *actus reus* of the crime").