# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class JHON R. HEATH**
**United States Army, Appellant**

ARMY 20150690

Headquarters, 7th Infantry Division
Samuel A. Schubert and Jeffery D. Lippert, Military Judges (arraignment)
Kenneth W. Shahan, Military Judge (trial)
Colonel Robert F. Resnick, Staff Judge Advocate (pretrial)
Lieutenant Colonel James W. Nelson, Staff Judge Advocate (post-trial)

For Appellant:  Lieutenant Colonel Charles D. Lozano, JA; Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA; Captain Tara O'Brien Goble, JA (on brief).

28 April 2017

---------------------------------
OPINION OF THE COURT
---------------------------------

MULLIGAN, Senior Judge:

On appeal from his conviction of one specification of sexual assault,[1] appellant's sole assignment of error is the military judge erred when he allowed the government to elicit a prior consistent statement from the alleged victim, Specialist (SPC) AP.[2]  While we disagree with the military judge's reasoning, under the 'Tipsy Coachman Doctrine' we find the military judge correctly admitted the prior consistent statement.

---

[1] In violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012 & Supp. I 2014) [hereinafter UCMJ].

[2] We have considered the matters personally submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they do not merit relief.

In addition to the mandatory dishonorable discharge, the panel with enlisted representation sentenced appellant to confinement for forty-five days, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

## BACKGROUND

After a night of heavy drinking, SPC AP awoke hungover and with extreme pelvic pain.  As she awoke, she saw appellant getting dressed and leaving her room.  Her memory of the prior night's events was limited to the earlier parts of the evening.

Later that day, appellant texted SPC AP, "You made last night epic."  When they later met in person appellant explained they had had sex.  Specialist AP then asked appellant to leave.  Appellant would make several statements (both to SPC AP and law enforcement) initially denying any sexual intercourse with SPC AP before eventually admitting they had sex.  Specialist AP reported a sexual assault within twenty-four hours.  A forensic exam of SPC AP's genitals revealed abrasions consistent with recent sexual intercourse.

## DISCUSSION

The assigned error concerns SPC AP's changing statements as to whether she awoke wearing underwear or not.  She testified on direct examination that she awoke wearing no underwear.  During cross-examination the defense counsel first inferred that SPC AP's testimony had been influenced by extensive pretrial preparation.  Counsel then tried to impeach SPC AP with her testimony from the preliminary hearing where she allegedly stated she was awoke wearing underwear.  The government then called SPC Edmond who testified that shortly after the assault SPC AP told him she had woke up with no underwear.

The question we resolve is whether SPC Edmond's testimony was admissible as a prior consistent statement.

*A. Specialist AP's Testimony on Direct*

The relevant testimony begins with the trial counsel's direct examination of SPC AP:

> Q: What were you wearing when you woke up?
>
> A: Just a t-shirt.
>
> Q: Did that strike you as unusual?

A: Yes, it did.  Because I didn't have any underwear on and I usually sleep with a t-shirt and underwear.

### B. *The Implied Charge of Improper Influence*

On cross examination, the defense *began* with an inquiry into SPC AP's preparation for testifying at trial:

Q: Good afternoon, [SPC AP].  I want to start out by asking you about your preparations for this trial. Did you meet with the prosecutors to prepare for the trial?

A: Yes, sir.

Q: And how many meetings was that?

A: Two.

Q: Which prosecutors did you meet with?

A: Major [O] and Captain [G].

Q: Not with Captain [S] earlier?

A: In the beginning, yes, I did, sir.

Q: And for trial today, did you review the text messages that you sent and received?

A: Yes, sir.

Q. Did you review your [Article] 32 testimony?

A: No, sir.

Q: Did you review your interview with [U.S. Army Criminal Investigation Command] CID agents?

A: In the beginning of the whole investigation, I did, sir.

Q: You watched your video back like [sic] shortly after you gave that interview?

A: No, sir.

Q: When did you watch the video?

A: Sunday.

After inquiring into which parts of SPC AP's testimony had been prepared, the defense counsel immediately turned to the issue of what she was wearing when she awoke the next morning:

Q: Do you remember the [Article] 32 investigation?

A: Yes, sir.

Q: It was about May. Do you remember Captain [S] asking you if you were wearing underwear when you woke up?

A: Yes, I do, sir.

Q: And do you remember telling her, yes you were wearing underwear?

A: No.

Q: You don't remember? Is it possible that you told her you were wearing underwear?

A: I don't--no, sir.

Q: It's not possible?

A: No, sir.

### C. The Prior Consistent Statement

The government then called SPC Edmond to repeat the statements SPC AP made to him the morning after the alleged assault—she woke up with "no underwear." The defense objected to this testimony as hearsay, preserving the issue for appeal. The government responded the statement was a prior consistent statement offered to rebut the inference of recent fabrication. The defense argued they were not trying to show improper influence, but rather just trying to attack SPC AP's reliability as a witness. In response to a question from the military judge, the defense stated they intended to play a recording of SPC AP's testimony at the Article 32, UCMJ, hearing. The military judge overruled the objection. Specialist Edmond testified as follows:

4

Q. What, if anything, did [SPC AP] say to you . . . what did she say to you the next morning regarding what she was wearing when she woke up?

[. . .]

A. She asked--she said that she woke up with no underwear.

## LAW AND ANALYSIS

A statement is "not hearsay" if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Military Rule of Evidence [hereinafter Mil. R. Evid.] 801(d)(1)(B)(i).

In *United States v. Allison*, our superior court stated they have:

> consistently interpreted the rule to require that a prior statement, admitted as substantive evidence, precede any motive to fabricate or improper influence that it is offered to rebut. Where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences, but only the one it is offered to rebut.

49 M.J. 54, 57 (C.A.A.F. 1998) (internal citations omitted).

During an Article 39(a), UCMJ, session to discuss the objection, the military judge focused on whether SPC AP's testimony at trial was different from the Article 32, UCMJ, hearing and whether SPC Edmond's statement offered at trial predated the Article 32, UCMJ, hearing. The military judge focused on whether the prior consistent statement predated the inconsistent statement. We disagree with the military judge's application of the rule.

The rule looks to whether the prior consistent statement predates the "improper influence" or "motive" to alter one's testimony. Thus, we agree with appellant, the military judge applied Mil. R. Evid. 801(d) incorrectly. Nonetheless, under the "Tipsy Coachman Doctrine" we find the military judge arrived at the correct result, even if for the wrong reason. *See United States v. Carista*, 76 M.J. 511 (Army Ct. Crim. App. 2017).

During cross-examination, defense counsel asked numerous questions about SPC AP's preparation for trial. Defense counsel asked SPC AP about how many times she met with prosecutors. Defense counsel asked what evidence she reviewed

prior to testifying.  These questions were designed to imply that SPC AP's testimony at trial had been influenced.[3]  Indeed, we find as fact the defense's entire opening line of inquiry was directed at trying to show SPC AP's testimony had been influenced by her pretrial preparations.  While a legitimate line of inquiry, such a broad-based attack carries with it the concomitant risk the government may introduce prior consistent statements which predate the expressed or implied influence.

Here, by implying SPC AP's testimony had been influenced as recently as the Sunday prior to trial, appellant risked the admission of a consistent statement made by SPC AP at any time before that Sunday.[4]  Accordingly, any statement consistent with her in-court testimony and predating that Sunday was not hearsay under Mil. R. Evid. 801.

## CONCLUSION

Finding no error, we AFFIRM the findings of guilty and the sentence.

Judge FEBBO and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[3] At trial defense counsel denied he was trying to imply that SPC AP had "fabricated" her testimony.  To the extent defense counsel was also denying any attempt to show SPC AP's testimony had been influenced by her pretrial preparation, we disagree.

[4] Specialist AP testified on 20 October 2015.  We take judicial notice this was a Tuesday.