# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant DAVID E. PADGETT**
**United States Army, Appellant**

ARMY 20180306

Headquarters, U.S Army Africa/Southern European Task Force
Joseph A. Keeler, Military Judge
Colonel Karen H. Carlisle, Staff Judge Advocate

For Appellant: Captain Zachary A. Gray, JA; Matthew Flynn, Esquire (on brief).

For Appellee: Colonel Steven Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig Schapira, JA; Captain Brian Jones, JA (on brief).

13 February 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

Appellant claims the military judge abused his discretion when he admitted testimony of a witness's prior consistent statements, and that several of the charges and their specifications are legally and factually insufficient.[1] For the reasons set forth below, we disagree with both assertions.

------

[1] Appellant also raises as an assignment of error that he was denied his due process right to speedy post-trial review by a post-trial delay of 215 days. We considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530-34 (1972), and find appellant has not satisfied the fourth prong of demonstrating prejudice. Accordingly we grant no relief.

Appellant has personally raised matters pursuant to *United States v. Grostefon*, 12

(continued . . .)

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of violating a general regulation, one specification of maltreatment, three specifications of making a false official statement, one specification of abusive sexual contact, one specification of sexual assault, three specifications of larceny of military property in excess of $500, two specifications of assault consummated by a battery, and one specification of communicating a threat, in violation of Articles 92, 93, 107, 120, 121, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 893, 907, 920, 921, 928, and 934.[2] The panel sentenced appellant to a dishonorable discharge and confinement for twenty-four months. The convening authority approved the sentence as adjudged.

## BACKGROUND

*Misconduct against Private AN*

While appellant was assigned to Fort Bragg, he engaged in an inappropriate relationship with Private (PVT) AN. Appellant and PVT AN were parachute riggers. Appellant was PVT AN's supervisor. They engaged in a consensual sexual relationship for a few months. During the beginning of their relationship, while visiting a beach, appellant hit PVT AN across her face. Private AN asked him why he hit her, to which appellant laughed and replied, "Just play along." On another occasion, PVT AN spent the night with appellant. In the middle of the night, she

---

(. . . continued)
M.J. 431 (C.M.A. 1982). Appellant alleges his trial defense counsel were ineffective. Broadly, appellant states he told his defense counsel on several occasions that he had consensual sex with one of the victims on two other occasions; that he provided nude photos of one of the victims during the investigation; and that the government was permitted to admit messages between appellant and one of the victims that were not the result of a digital forensic examination. Appellant does not state how his counsel were deficient based on his three allegations, nor does he demonstrate prejudice. Accordingly, we find appellant has fallen far short of meeting his burden under *Strickland v. Washington*, 466 U.S. 668 (1984). We have given full and fair consideration to appellant's other matters raised pursuant to *Grostefon* and find they likewise merit no relief.

[2] The military judge merged the two specifications of assault consummated by a battery (Specifications 1 and 2 of Charge II) with one of the specifications of sexual assault (Specification 3 of Charge I) for sentencing. The military judge also merged two of the specifications of making a false official statement (Specifications 1 and 2 of Additional Charge II) for sentencing.

woke up to appellant standing over her, holding his penis, and ejaculating on her face. Private AN was upset and their relationship ended shortly thereafter.

*Misconduct against Private First Class SV*

When appellant was later assigned to Aviano Air Base, Italy, he engaged in another inappropriate relationship, this time with Private First Class (PFC) SV, who was also a parachute rigger. Appellant, still a Staff Sergeant, was PFC SV's direct supervisor. On one occasion, appellant texted PFC SV asking her to come to his house so that they could engage in sex. She agreed. Appellant texted PFC SV stating, "I'm into some pretty weird things." She responded "Okay." After appellant sent PFC SV his address, but prior to PFC SV arriving, appellant texted her asking if he could "choke her until [she] passed out." Private First Class SV replied, "I feel like that is something that you need to bring up in person." Appellant replied back, "Well I'm going to let go when you stop moving."

Private First Class SV decided to go to appellant's home. Throughout her stay there, they did not discuss appellant choking her. They engaged in consensual sex and appellant requested PFC SV call him by his rank. When she did not comply, appellant hit her in the face. Appellant called her a "whore and a slut." Appellant then began choking PFC SV with one hand, while the other hand was holding down her wrists. Appellant applied pressure to PFC SV's neck restricting her breathing. While choking her, appellant continued to call her a "slut and a whore." She said "stop" several times. After approximately fifteen seconds, appellant let go of PFC SV's neck and then he slapped her in the face "really hard." Appellant then continued to have sex with her three or four times. When appellant finished, he told her "You need to go shower." Before PFC SV left appellant's home, appellant threatened her, "Don't say anything to anybody," and "This will ruin your career."[3]

---

[3] We find appellant's statements are legally and factually sufficient to establish the offense of communicating a threat under Article 134, UCMJ. Specifically, we considered the context of appellant's statements to PFC SV, which occurred almost immediately after he assaulted and sexually assaulted her. These circumstances "colored and qualified" appellant's statements, demonstrating that they were intended to prevent PFC SV from reporting. *United States v. White*, 62 M.J. 639, 642 (N.M. Ct. Crim. App. 2006) (holding "communicating a threat is 'wrongful' under Article 134 when the motive for the communications is wrongful.") (citation omitted). It is not necessary to discuss further appellant's claim that his conviction for communicating a threat is legally and factually insufficient.

*PVT AN and PFC SV Reporting*

After appellant sexually assaulted PFC SV, she started dating Specialist (SPC) SC. Private First Class SV told SPC SC that appellant was harassing her and sending her sexual text messages. Specialist SC was also friends with PVT AN, and put PFC SV and PVT AN in touch. Private AN told PFC SV that she already reported appellant and PFC SV would be contacted as a part of the investigation. Private First Class SV reported appellant's harassment to the Army Criminal Investigation Command (CID), but did not report appellant's physical and sexual abuse.

A few months later, PFC SV met with the unit trial counsel, Captain (CPT) SM. During this meeting, CPT SM informed PFC SV that appellant admitted to having sex with her, but he claimed it was consensual. At that point, PFC SV asked CPT SM if she could get in trouble. Captain SM replied he could not guarantee that she would not face adverse action, but he would advise her chain of command she should not be held responsible for any fraternization. Private First Class SV then reported that appellant sexually assaulted her, choked her, slapped her, and threatened to ruin her career if she told anyone.

## LAW AND DISCUSSION

*A. Admission of Private First Class SV's Prior Consistent Statements*

We first address appellant's assertion the military judge abused his discretion in allowing CPT SM to testify, pursuant to Military Rule of Evidence [Mil. R. Evid.] 801(d)(1)(B)(i), regarding SV's prior consistent statements to him reporting the details of how appellant sexually assaulted her. We disagree and find PFC SV's prior consistent statements to CPT SM were admissible under Mil. R. Evid. 801(d)(1)(B)(i).[4]

Hearsay is defined as an out-of-court statement made by a declarant that is offered in evidence "to prove the truth of the matter asserted in that statement." Mil. R. Evid. 801(c). Hearsay is generally inadmissible at trial. Mil. R. Evid. 802. However, a prior consistent statement of a witness is not hearsay if it is offered "to rebut an express or implied charge that the declarant recently fabricated it or acted

---

[4] Appellant claims PFC SV's prior consistent statements were inadmissible under both Mil. R. Evid. 801(d)(1)(B)(i) and (ii). The military judge allowed the evidence under both (i) and (ii). As we find PFC SV's prior consistent statements to CPT SM admissible under part (i), we do not address the admissibility of the evidence under part (ii).

from a recent improper influence or motive in so testifying." Mil. R. Evid. 801(d)(1)(B)(i); *see also United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998).

Military Rule of Evidence 801(d)(1)(B) contains several "inherent safeguards" that must be satisfied before prior statements will be admitted. *United States v. Hood*, 48 M.J. 928, 933 (Army Ct. Crim. App. 1998) (citing *United States v. McCaskey*, 30 M.J. 188, 191 (C.M.A. 1990)). "The rule's predicate safeguards are that the declarant must testify at trial and be subject to cross-examination; the statement must be consistent with the declarant's in-court testimony; and, the statement must be offered to actually rebut an attack of recent fabrication or improper motive or influence." *Hood*, 48 M.J. at 933; *see also United States v. Frost*, 79 M.J, 104, 109-10 (C.A.A.F. 2019). Additionally, "the prior statement . . . . must precede any motive or improper influence that it is offered to rebut." *Frost*, 79 M.J. at 110. Also, "where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inference, but only the one it is offered to rebut." *Id.* (citing *Allison*, 49 M.J. at 57) (further citations omitted).

In regards to Mil. R. Evid. 801(d)(1)(B)(i), the military judge found that the defense had impeached PFC SV by eliciting testimony of her "improper motive of colluding with [PVT AN] as evidenced by the calls made to them and [PVT AN] encouraging [PFC SV] to testify[,] to go to CID and that collusion which continued until just a couple of days ago."

We review a military judge's admission or exclusion of evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

We find PFC SV's prior consistent statements to CPT SM were admissible because they predated the improper influence elicited by defense that PVT AN and PFC SV discussed their testimony with each other immediately prior to trial. The military judge found that defense had elicited testimony that PVT AN and PFC SV "colluded" in reporting appellant which continued until a couple of days before trial. The military judge's finding is clearly supported by PVT AN's and PFC SV's testimony.

During the defense cross-examination of PVT AN, she testified that she encouraged PFC SV to report appellant "because what [appellant] had done to [PFC SV] and how he was treating [PFC SV] was very similar to the way that [PVT AN's] relationship with [appellant] started." After encouraging PFC SV to report appellant, PVT AN stated to PFC SV, "Let me know when you go [to CID] and what

they say and then I'll go." Notably, PVT AN testified that she contacted PFC SV a week prior to trial.

Defense counsel elicited very similar testimony from PFC SV on cross-examination. Private First Class SV testified that she texted PVT AN after she left CID asking her, "Want me to put anything else?" Central to the military judge's ruling, PFC SV confirmed that she talked to PVT AN "a few nights" prior to trial.

Accordingly, the military judge did not abuse his discretion in ruling CPT SM could testify about PFC SV's prior consistent statements to him, which predated the improper motive insinuated by defense that PVT AN and PFC SV talked just days before trial.[5] *See, e.g., United States v. Bell*, 72 M.J. 543, 557 (Army Ct. Crim. App. 2013) (finding defense "unwittingly opened the door" to victim's prior consistent statement when defense cross-examined victim about the conversation she had with her grandmother the night prior to trial and its impact on her in-court testimony); *United States v. Heath*, 76 M.J. 576, 578 (Army Ct. Crim. App. 2017) (finding defense implied that victim's testimony was influenced by pretrial preparations with the trial counsel as recently as the Sunday prior to trial which allowed admission of a consistent statement made by the victim any time before that Sunday).

### B. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of his convictions for sexually assaulting and maltreating PFC SV.[6] We disagree.

We review issues of legal and factual sufficiency de novo. UCMJ art. 66; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

---

[5] We pause to highlight the importance of identifying the precise point in time that the charged improper influence or motive arose in relation to when the witness made the prior consistent statement. *See, e.g., United States v. Taylor*, 44 M.J. 475, 480 (C.A.A.F. 1996); *United States v. Morgan*, 31 M.J. 43, 46 (C.M.A. 1990); *United States v. McCaskey*, 30 M.J. at 192.

[6] Appellant also challenges the legal and factual sufficiency of his convictions for the abusive sexual contact of PVT AN; choking, hitting, and threatening PFC SV; and making false official statements. We find the evidence legally sufficient to support these convictions and are convinced of appellant's guilt beyond a reasonable doubt.

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable interference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [appellant's] guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," and we apply "neither a presumption of innocence nor a presumption of guilt" while making "[our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

### 1. Sexual Assault of Private First Class SV

In regards to appellant's conviction for sexually assaulting PFC SV, the government was required to prove beyond a reasonable doubt that: (1) appellant committed a sexual act upon PFC SV by causing penetration, however slight, of the vulva . . . by the penis; and (2) appellant did so by causing bodily harm to PFC SV, by "squeezing her neck and slapping her." *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 45(b)(3)(b). Appellant specifically challenges whether there was sufficient evidence that PFC SV manifested her lack of consent to sexual intercourse, and asserts he had a reasonable mistake of fact as to her consent.

With regard to consent, "lack of consent may be inferred based on the circumstances of the offense. All the surrounding circumstances are to be considered in determining whether a person gave consent, or whether a person did not resist or ceased to resist only because of another person's actions." UCMJ art. 120(g)(8)(C). However, evidence of a misunderstanding of the circumstances surrounding an offense may give rise to the defense of mistake of fact. *See* Rule for Courts-Martial [R.C.M.] 916(j)(1). If shown by some evidence, mistake of fact as to consent is a defense to sexual assault. *See id.* The defense of mistake of fact requires that an accused, because of ignorance or mistake, incorrectly believed that another consented to the sexual act. *See id.* In order to rely on the defense of mistake of fact, appellant's belief must have been honest and reasonable. *See id.*; *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998) (quoting *United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995)). As we discuss below, we find that based on the circumstances, PFC SV did not consent and appellant's mistake of fact was not objectively reasonable.

7

Private First Class SV testified that while appellant, a Staff Sergeant and her direct supervisor, was choking her, she was "really, really scared," and "[she] didn't know when he was going to let go." She testified that she "couldn't really breathe and she just wanted it to be over with." She said "stop" several times and testified that when she said "stop," she wanted him to stop "everything." After approximately fifteen seconds, appellant let go of PFC SV's neck and then he slapped her in the face "really hard." Appellant then continued to have sex with her. Private First Class SV testified that after appellant stopped choking her and slapped her, "[she] was really scared of [appellant]," and she "wanted it to be over."

We find it was not objectively reasonable for appellant to believe PFC SV was consenting to sex with him after he choked her and she pleaded for him to stop several times. Appellant's choking of PFC SV drastically altered the nature of their sexual interaction. Appellant's belief became even more unreasonable after he slapped her really hard. Under these circumstances, it was reasonable for the members to find beyond a reasonable doubt, due to appellant's violent actions, that PFC SV revoked her consent to sex with appellant, feared appellant, and as a result she ceased resisting. We are also convinced beyond a reasonable doubt that all the required elements of proof are met to convict appellant of sexually assaulting PFC SV, and we are convinced the evidence factually supports appellant's conviction.

### 2. *Maltreatment of Private First Class SV*

In regards to appellant's conviction for maltreating PFC SV, the government was required to prove: (1) PFC SV was subject to appellant's orders; and (2) appellant was cruel toward, oppressed, or maltreated PFC SV "by calling her a whore and a slut, or words to that effect." *MCM,* pt. IV, ¶ 17.b. Our Superior Court has clarified that to affirm a conviction for maltreatment the evidence must prove: "(a) the accused knew that the alleged victim was subject to his . . . orders; (b) the accused knew that he . . . was making statements or engaging in certain conduct in respect to that subordinate; and (c) when viewed objectively under all the circumstances, those statements or actions were unwarranted, unjustified, and unnecessary for any lawful purpose and caused, or reasonably could have caused, physical or mental harm or suffering." *United States v. Caldwell,* 75 M.J. 276, 281 (C.A.A.F. 2016).

Appellant does not specifically state why his conviction for maltreating PFC SV is legally and factually insufficient, but alludes to the name-calling being part of a consensual sexual encounter.[7] We disagree and briefly address why appellant's conduct rises to the level of maltreatment.

---

[7] In considering all the circumstances in which to view an accused's actions,

(continued . . .)

First, appellant's assertion of consent is not relevant because the evidence supports a finding beyond a reasonable doubt that the sex was no longer consensual once appellant started choking PFC SV and she repeatedly pleaded with him to stop. After PFC SV revoked consent, appellant continued to call her "a slut and a whore," and slapped her. At that point, PFC SV testified she was scared of appellant. Under these circumstances, appellant's actions, in the very least, reasonably could have caused PFC SV physical or mental harm or suffering.

"The very lifeblood of the military is the chain of command." *Caldwell*, 75 M.J. at 282. "The essence of the offense [of maltreatment] is abuse of authority. *Id.* (citing *United States v. Carson*, 57 M.J. 410, 415 (C.A.A.F. 2002)). Viewing appellant's conduct "objectively under all the circumstance," we begin by recognizing that appellant's relationship with PFC SV was initially professional. She was a shop foreman in appellant's platoon. As her supervisor, appellant "would pull her aside" to show her how to do things that were advanced for a shop foreman, like driving one of the vehicles. Eventually, their relationship turned inappropriate. Appellant took a subordinate soldier, whom he directly supervised, engaged in sex with her, called her a "whore and a slut," demanded she call him by his full rank, and when she refused, he hit her in the face. Appellant's conduct became maltreatment when he choked PFC SV, and while she pleaded for him to stop, he called her "a slut and a whore." This was a clear abuse of appellant's authority over PFC SV.

Accordingly, we are convinced beyond a reasonable doubt that the government met all the essential elements of proof to convict appellant of maltreating PFC SV. Further, we find the evidence factually sufficient to support appellant's conviction for maltreating PFC SV.

## CONCLUSION

On consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Judge RODRIGUEZ and Judge FLEMING concur.

---

(. . . continued)
consent is relevant in determining whether the accused's actions caused, or reasonably could have caused, physical or mental harm or suffering. *See, e.g.,* *United States v. Fuller*, 54 M.J. 107, 111 (C.A.A.F. 2000) (finding no maltreatment between a superior noncommissioned officer and a Private First Class where the sex was consensual and the subordinate did not feel threatened), overruled on other grounds by *United States v. Miller*, 67 M.J. 385 (C.A.A.F. 2009).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court