CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, SALADINO, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant ANTHONY J. PATTON**
**United States Army, Appellant**

ARMY 20150675

Headquarters, 2d Infantry Division
Tiernan P. Dolan, Military Judge
Lieutenant Colonel Timothy P. Hayes, Jr., Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Katherine L. DePaul, JA (on brief)

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA; Captain Tara O'Brien Goble, JA (on brief)

7 April 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SALADINO, Judge:

A panel with officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of maltreatment of a subordinate, and one specification of wrongfully accessing a barracks closed-circuit television system, in violation of Articles 93 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 893, 934 (2012 & Supp. I 2014) [hereinafter UCMJ]. The panel sentenced appellant to a bad-conduct discharge, forfeiture of $1,596.00 pay for one month, a reprimand, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises two assignments of error, both of which merit discussion but no relief. Appellant personally raises additional matters pursuant to *United States v.*

*Grostefon*, 12 M.J. 431 (C.M.A. 1982), one of which warrants discussion, but none of which warrant relief.

## BACKGROUND

Appellant was a noncommissioned officer assigned to the 2d Infantry Division, Camp Carroll, Republic of Korea, where he served as a supervisor for newly-arrived soldiers. In August or September 2014, Private First Class (PFC) SC was assigned as one of appellant's subordinates. Like many other junior-enlisted soldiers under his charge, PFC SC arrived at Camp Carroll from Advanced Individual Training as her first duty station. Upon her arrival, and for reasons of accountability, appellant asked PFC SC and all his other soldiers to provide him their personal cell phone numbers. Shortly thereafter, appellant began speaking with and sending text messages to PFC SC in a manner that was more personal than professional in nature. For example, he asked her if she could show him around Korea and if she was "talking" to anyone. Because she did not want to seem rude or insubordinate, PFC SC answered his questions and replied to his text messages. When returning his text messages, she often ended her responses with the tag line, "LOL," as an acronym for "laugh out loud." On one occasion, he sent her a text message asking whether she was single or attached. After PFC SC responded that she was unattached, appellant sent her the following text message: "the next man has nothing to do with anything. Anything I want, I obtain it." On another occasion, appellant rubbed PFC SC's shoulders while calling her "babe." Appellant also wrongfully accessed the closed-circuit television system in the barracks building where he and his soldiers lived, apparently seeking the existence of unfavorable footage of him or his soldiers.

## LAW AND DISCUSSION

### A. Consent and Acquiescence Instruction

On appeal appellant argues the military judge erred in failing to instruct the panel to consider evidence of PFC SC's consent or acquiescence in determining whether appellant maltreated her. We find merit in appellant's contention, but find no prejudice to his substantial rights.

In general, whether a panel was properly instructed is a question of law reviewed de novo. *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017). However, the particular factors at play in each case can modify this general standard of review. For example, "[w]hile counsel may request specific instructions from the military judge, the judge has substantial discretionary power in deciding on the instructions to give." *United States v. Carruthers*, 64 M.J. 340, 345 (C.A.A.F. 2007) (quoting *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993)); *see* Rule for Courts-Martial [hereinafter R.C.M.] 920(c) discussion. "Thus, the military judge's denial of a requested instruction is reviewed for abuse of discretion.

*Carruthers*, 64 M.J. at 345-46 (citing *Damatta-Olivera*, 37 M.J. at 478, and *United States v. Rasnick*, 58 M.J. 9, 10 (C.A.A.F. 2003)).

In the absence of a specific request, "for mandatory instructions under R.C.M. 920(e)(1)-(3), a military judge retains the *sua sponte* duty to instruct on defenses raised by some evidence." *United States v. Davis*, 75 M.J. 537, 543 (Army Ct. Crim. App. 2015) (en banc); *see also United States v. MacDonald*, 73 M.J. 426, 433 n.2 (C.A.A.F. 2014) ("If an affirmative defense is reasonably raised by the evidence, the military judge has a sua sponte duty to instruct the members on that defense."). Nevertheless, in the case of any unpreserved error, the failure to object or request an instruction forfeits the matter, absent plain error. *United States v. Payne*, 73 M.J. 19, 23 (C.A.A.F. 2014); *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013); *United States v. Simpson*, 56 M.J. 462, 465 (C.A.A.F. 2002); *Davis*, 75 M.J. at 543-44; R.C.M. 920(f)[1]

Under our superior court's plain error jurisprudence, "'[a]ppellant has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights.'" *McClour*, 76 M.J. at 25 (quoting *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014)). "'[T]he failure to establish any one of the prongs is fatal to a plain error claim.'" *Id.* (quoting *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006)). Furthermore, whether an error is constitutional or non-constitutional determines the level of[2] scrutiny applied during our prejudice analysis. Instructional errors are of constitutional magnitude if "'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). If we find the instructional error rises to a constitutional dimension, we may only affirm the affected findings of guilty if we determine the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24 (1967); *United States v. Kreutzer,* 61 M.J. 293, 298–99 (C.A.A.F. 2005). If, however, the error falls short of this standard and is non-constitutional, we must determine "whether the instructional error had 'substantial

---

[1] R.C.M. 920(f) continues to use the word "waiver." For consistency and accuracy, we follow our superior court's example and use the correct term of "forfeiture." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.") (internal citations and quotations marks omitted).

[2] Corrected.

influence' on the findings." *United States v. Gibson,* 58 M.J. 1, 7 (C.A.A.F. 2003) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765 (1946)).

Here, at the close of evidence on findings, the military judge discussed with counsel the instructions he intended to provide the panel. After discussing proposed instructions, neither the government nor the defense raised an objection or asked for additional instructions. As a result, the military judge instructed the panel as originally proposed. As an initial matter, therefore, we find appellant forfeited any claim of instructional error and review the military judge's instructions for plain error.

With regard to the first and second prongs of plain-error review, we must determine whether the military judged committed obvious error when he failed to instruct the panel concerning evidence of consent or acquiescence. The relevant instruction in the Military Judges' Benchbook reads as follows:

> (Along with all other circumstances, you must consider, evidence of the consent (or acquiescence) of (state the name (and rank) of the alleged victim), or lack thereof, to the accused's actions. The fact that (state the name (and rank) of the alleged victim) may have consented (or acquiesced), does not alone prove that he/she was not maltreated, but it is one factor to consider in determining whether the accused maltreated, oppressed, or acted cruelly toward, (state the name (and rank) of the alleged victim).)

Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3-17-1.d. (10 Sept. 2014); *see United States v. Carson*, 57 M.J. 410 (C.A.A.F. 2002); *United States v. Fuller*, 54 M.J. 107 (C.A.A.F. 2001).

Based on the facts in this case, we find the failure to provide this portion of the Benchbook instruction to the panel prior to its deliberations constitutes obvious error on the part of the military judge. As the court in *Carson* previously explained, "[w]hether conduct constitutes 'maltreatment' within the meaning of Article 93, UCMJ, in a particular case *requires* consideration of the specific facts and circumstances of that case." 57 M.J. at 415 (emphasis added). One of the issues expressly raised in this case was whether PFC SC consented or acquiesced to the charged conduct. The government and defense specifically questioned PFC SC and appellant about PFC SC's use of "LOL" in her text messages and continued dialogue with appellant via text messages. Also, in the closing argument on findings, defense counsel cited the Benchbook instruction on acquiescence and PFC SC's text messages

as proof of acquiescence.[3] Because it was expressly raised by the evidence and argued to the panel, the instruction to consider evidence of PFC SC's consent or acquiescence (or lack thereof) to the charged conduct should have been given by the military judge.

Turning to the third prong of plain-error review, we must determine whether appellant was materially prejudiced by the obvious error. After a complete and thorough review of the entire record of trial, there is no reasonable interpretation of the facts to conclude this non-constitutional error resulted in material prejudice to appellant's substantial rights, nor did it have a substantial influence on the findings of this court-martial.

Even if we accepted the higher prejudice standard for constitutional error argued by appellant, we reach the same conclusion. First, as explained below when discussing the mistake-of-fact instruction, consent is not a defense to maltreatment. The argument that an instruction about PFC SC's "acquiescence" to appellant's advances would have negated an element of the offense misunderstands the desired instruction. The fact that the victim may have consented or acquiesced, *does not alone prove that she was not maltreated*, but it is one factor to consider. *See* Benchbook, para. 3-17-1.d. Second, while evidence of consent or acquiescence was raised, it was far from persuasive. Private First Class SC gave a credible explanation for her habitual use of "LOL" while sending text messages, which included her fear of seeming insubordinate when rebuffing appellant's advances. Similarly, appellant's text messages did not show PFC SC's consent; rather, it illustrated his belief that he always gets what he wants. Third, it is important to note the panel was not entirely without guidance when evaluating the charged conduct. The military judge instructed the panel that the "maltreatment must be real," and "viewed objectively under all of the circumstances . . . ." For the above reasons, even when the evidence clearly raised the issue of consent or acquiescence, we are convinced appellant was not prejudiced by the instructional error.

*B. Cruelty and Maltreatment*

---

[3] After the instructions on the law, defense counsel argued: "And when you consider maltreatment, the instructions say the maltreatment has to be real. Now, it also says that along with all of the other circumstances you must consider evidence of the consent or acquiescence of PFC [SC] or lack thereof of the accused's actions." Trial counsel did not object this characterization of the instructions, and defense counsel continued its argument: "Does, 'LOL' not indicate acquiescence? 'Laugh out loud,' continuously. But she texted, 'dot-dot-dot' and 'dot-dot-dot' is supposed to mean, 'Stop,' that, 'I am uncomfortable.' It doesn't make sense."

On appeal, appellant argues the military judge erred in his instructions to the panel regarding Article 93, UCMJ, in that when a statute is silent as to intent, it must be read to require more than mere negligence, in accordance with the principles enunciated in *Elonis v. United States*, 135 S. Ct 2001, 2009, 192 L. Ed. 2d 1 (2015). We do not find merit in appellant's contention.

When an instructional error is preserved as explained above, "[q]uestions pertaining to the substance of a military judge's instructions, as well as those involving statutory interpretation, are reviewed de novo." *United States v. Caldwell*, 75 M.J. 276, 280 (C.A.A.F. 2016) (citing *United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008), and *United States v. Smith*, 50 M.J. 451, 455 (C.A.A.F. 1999)). When, however, the instructional error is forfeited, it is reviewed on appeal for plain error. *Payne*, 73 M.J. at 23. "Importantly, we stress [again] that a de novo review and plain error review are not mutually exclusive." *Davis*, 75 M.J. at 542 (citing *Tunstall*, 72 M.J. at 193) (emphasis omitted). Here, when reviewing the first prong under plain error analysis (i.e., whether there was error), we review the substance of the instruction given de novo. Finding no error, further analysis for plain error is unnecessary. *McClour*, 76 M.J. at 25.

In this case, when instructing the panel, the military judge stated maltreatment includes:

> [T]reatment that when viewed *objectively* and under all circumstances is abusive or otherwise unwarranted, unjustified and unnecessary for any lawful purpose, and the–and that results in physical or mental harm or suffering or reasonably could have caused physical or mental harm or suffering.

(Emphasis added.).

"It is a fundamental principle of criminal law that 'wrongdoing must be conscious to be criminal.'" *Caldwell*, 75 M.J. at 280 (quoting *Elonis*, 135 S. Ct. at 2009). The general rule is that a guilty mind is "a necessary element in the indictment and proof of every crime." *United States v. Balint*, 258 U.S. 250, 251 (1922). "This does not mean that an accused must know that his actions constitute criminal conduct. Rather, an accused must have knowledge of 'the facts that make his conduct fit the definition of the offense.'" *Caldwell*, 75 M.J. at 280 n.4 (quoting *Staples v. United States*, 511 U.S. 600, 607 n.3 (1994)).

As our superior court explained in *United States v. Caldwell*:

> the Supreme Court has held that even when a *mens rea* requirement is not explicitly included in a criminal statute, that does not necessarily mean that such a requirement can

6

> be dispens[ed] with. Rather, generally speaking, criminal statutes should be interpreted by courts as still including broadly applicable [*mens rea*] requirements, even where the statute . . . does not contain them. However, in inferring a *mens rea* requirement in a statute that is otherwise silent as to intent, courts must only read into the statute that *mens rea* which is necessary to separate wrongful conduct from innocent conduct.
>
> Importantly, in some instances, the mere requirement in a statute that a defendant commit an act with knowledge of certain facts—i.e., that the defendant possessed "general intent"–is enough to ensure that innocent conduct can be separated from wrongful conduct.

*Id.* at 281 (internal citations and quotation marks omitted) (emphasis added).

In the context of maltreatment, our superior court has found "there is no scenario where a superior who engages in the type of conduct prohibited under Article 93, UCMJ, can be said to have engaged in innocent conduct." *Id.* This is based on "the unique and long-recognized importance of the superior-subordinate relationship in the United States armed forces, and the deeply corrosive effect that maltreatment can have on the military's paramount mission to defend our Nation." *Id.* "[T]he military must insist upon a respect for duty and a discipline without counterpart in civilian life. The laws and traditions governing that discipline have a long history [and] are founded on unique military exigencies as powerful now as in the past." *United States v. Heyward*, 22 M.J. 35, 37 (C.M.A. 1986) (quoting *Schlesinger v. Councilman*,420 U.S. 738, 757 (1975)). "The very lifeblood of the military is the chain of command." *Id.* "The armed forces depend on a command structure that at times must commit men [and women] to combat, not only hazarding their lives but ultimately involving the security of the Nation itself." *United States v. Priest*, 21 U.S.C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972). The corollary principle is that superiors must not maltreat their subordinates. *Caldwell*, 75 M.J. at 282. Article 93, UCMJ, is intended to preserve the integrity of the superior-subordinate relationship. *Id.* (citing *United States v. Dickey*, 20 C.M.R. 486, 488 (A.B.R. 1956)).

Accordingly, "a superior who voluntarily engages in objectively abusive conduct towards a subordinate cannot be heard to complain that his actions were protected by his freedom of speech, or that his actions were lawful in any other sense." *Id.* at 282 n.8. "[B]ecause of the unique nature of the offense of maltreatment in the military, a determination that the Government is only required to prove general intent in order to obtain a conviction under Article 93, UCMJ, satisfies the key principles enunciated by the Supreme Court in *Elonis*." *Id*. at 278.

Accordingly, the "key question is whether appellant possessed general intent to undertake the conduct that either caused or could have caused suffering." *Id.* at 282 (citing *Carter v. United States*, 530 U.S. 255, at 269-70 (2000)). The military judge's instructions comport with the standards articulated herein. We therefore conclude there was no error in the substance of the instructions the military judge provided to the panel.

## C. Mistake of Fact

Finally, appellant personally contends in his *Grostefon* matters the military judge committed plain error when he failed to give the mistake of fact instruction to the panel for the charge of maltreating PFC SC. We disagree. As a matter of law, mistake of fact regarding a victim's consent is not available as a complete or partial defense for a violation of Article 93, UCMJ. The purpose of Article 93, UCMJ, is "to preserve the integrity of the superior-subordinate relationship. . . . It is for this reason [our superior court has] held that criminal liability for maltreatment does not depend on whether conduct actually effects harm upon the victim, and that '[t]he essence of the offense [of maltreatment] is abuse of authority.'" *Id.* at 281-82 (quoting *Carson*, 57 M.J. at 415). Accordingly, if "[t]he abusive conduct . . . is *consciously* directed at a subordinate[, it] is in no sense lawful." *Id.* at 282.

Since mistake of fact regarding a subordinate's consent does not reduce a superior's criminal responsibility for abusive conduct consciously directed at the subordinate, it is not an available defense against the *mens rea* required for maltreatment. *See* R.C.M. 916(a) ("As used in this rule, 'defenses' includes any special defense which, although not denying that the accused committed the objective acts constituting the offense charged, denies, wholly or partially, criminal responsibility for those acts."); R.C.M. 916(j)(1) ("[I]f the accused's knowledge or intent is immaterial as to an element, then ignorance or mistake is not a defense."). Accordingly, the Benchbook instruction correctly describes evidence of consent or acquiescence as merely one, non-dispositive factor to consider whether the charged conduct amounts to cruelty, oppression, or maltreatment (i.e., whether the *actus reus* is proved beyond a reasonable doubt). *See* Benchbook, para. 3-17-1.d.

Therefore, this error personally asserted by appellant is distinguishable from the assigned instructional error regarding evidence of consent or acquiescence. This claim of instructional error fails as a matter of law. Appellant was not entitled to a mistake-of-fact instruction as to consent, and the military judge did not err[4] by not giving it. As a result, there is no prejudice to assess, and no relief warranted.

---

[4] Corrected.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Senior Judge TOZZI and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court