# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant JESUS D. CARDENAS**
**United States Army, Appellant**

ARMY 20180416

U.S. Army Military District of Washington
James A. Ewing and Daniel G. Brookhart, Military Judges
Colonel John P. Carrell, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain James J. Berreth, JA (on brief); Lieutenant Colonel Tiffany D. Pond, JA; Captain Steven J. Dray, JA; Captain James J. Berreth, JA (on reply brief); Lieutenant Colonel Tiffany D. Pond, JA; Major Kyle C. Sprague, JA; Captain James J. Berreth, JA (on brief on specified issues).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Jeremy Watford, JA (on brief); Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig Schapira, JA (on brief on specified issues).

27 November 2019

--------------------------------------
MEMORANDUM OPINION
--------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SALUSSOLIA, Judge:

The offenses for which appellant stands convicted transpired while he was assigned as a cadre member at the Warrior Transition Battalion (WTB), Fort Belvoir, Virginia. While serving as a cadre member, appellant engaged in personnel relationships with two junior enlisted soldiers, Specialist (SPC) SD and SPC SV, who were also assigned to the WTB. Appellant was convicted of sexually assaulting, committing abusive sexual contact upon, and maltreating SPC SD during

their personal relationship.[1] Appellant was also convicted of impeding an investigation into his alleged misconduct against SPC SV.[2]

Appellant's case is before this court for review pursuant to Article 66(c), Uniform Code of Military Justice [UCMJ]. Appellant raises two assignments of error: (1) the factual sufficiency of his convictions of Specifications 1 (sexual assault by bodily harm) and 2 (abusive sexual contact) of Charge I; and (2) the legal sufficiency of his conviction of maltreatment. Appellant's factual sufficiency challenge to his convictions of sexual assault and abusive sexual contact warrants no discussion, and we find both convictions factually and legally sufficient. However, we find his conviction of Specification 1 of Charge II (maltreatment) factually insufficient for reasons discussed below. Because we find the maltreatment conviction factually insufficient and provide relief in our decretal paragraph, we need not address appellant's challenge to its legal sufficiency. Second, we discuss and remedy appellant's convictions of multiplicious specifications of maltreatment and sexual assault. Finally, we find merit in appellant's *Grostefon* claim that his conviction for obstruction of justice is factually insufficient.[3]

## LAW AND DISCUSSION

### A. Maltreatment by "Pressuring" SPC SD into a Relationship - Factually Insufficient

As a WTB cadre member, appellant oversaw the unit's adaptive sports program. Through these duties, appellant met SPC SD, a WTB trainee, shortly after her arrival in the fall of 2014. Appellant started bringing lunch to SPC SD while she was at the archery range. Eventually, appellant and SPC SD started going out to lunch together. While SPC SD recognized that this type of activity between a cadre

---

[1] While appellant was also charged with sexually assaulting and maltreating SPC SV, he was acquitted of those offenses by the military judge.

[2] A military judge, sitting as a general court-martial, convicted appellant, contrary to his pleas, of sexual assault, abusive sexual contact, obstruction of justice and maltreatment in violation of Articles 93, 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 893, 920, 934 (2012) [UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, five years' confinement and reduction to the grade of E-1.

[3] In addition to this issue, appellant made additional claims pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) for this court's consideration. We have given full and fair consideration to the additional matters presented and find them to be without merit.

member and trainee was against WTB policy, she did not feel uncomfortable as she believed they were just friends.

The relationship progressed to other non-duty related activities such as having dinner together, participating in recreational activities, and attending sporting events. Each time, SPC SD freely accepted appellant's invitation to these events. She testified that while she believed these engagements were not dates and their relationship was strictly platonic, appellant left her with the impression that he felt differently.[4] She nonetheless continued to spend her off-duty time with appellant. When appellant initially invited SPC SD to his off-post apartment, she declined. But eventually, SPC SD agreed to visit appellant's apartment on more than one occasion. These visits were a continuation of their platonic relationship and otherwise uneventful.

This changed in early May of 2015, when appellant sexually assaulted SPC SD during a weekend stay at his apartment. Specialist SD arrived at appellant's apartment on Friday, intending only to hang out for the evening. During the evening, appellant asked her to stay the night. Although she initially said no, she eventually consented as she felt badly about not trusting him. She agreed to stay as long as they had separate sleeping arrangements. Specialist SD slept on the couch and appellant slept in his bedroom. The night ended without incident.

The next morning appellant asked SPC SD to spend the day with him at his apartment. Specialist SD explained she had to go home to get clean clothes, so appellant went out and bought her new clothes. She remained at his apartment, believing that she owed him for buying her new clothes. Later in the day, appellant asked SPC SD if she wanted to be his girlfriend. She initially refused him but changed her mind after appellant pleaded, "what is the worst that could happen? Just give me a shot, chance." She could no longer think of an excuse to refuse him and eventually said yes. She also planned to end the relationship with appellant as soon as possible without being mean "because he was a very nice guy."

Despite her lack of desire for a more intimate relationship with appellant, SPC SD agreed to spend another night at his apartment. She was uncomfortable with sharing appellant's bed, but did so after they agreed to sleep on opposite sides of the bed and not touch each other. Specialist SD claims her sleeping attire included underwear, leggings, a shirt, and a jacket.

Once they were in bed, appellant began talking to SPC SD and touching her on the face. She was uncomfortable with the touching but did not tell him to stop.

---

[4] Specialist SD testified that appellant made flattering comments towards her, to which she responded by expressing her interest in other men. She described appellant's reaction to her responses as merely one of sadness.

Appellant then touched her arm and eventually moved his hand down her body until he placed his hand between her legs. At this point, SPC SD told him no. However, appellant did not stop and proceeded to pull down her leggings and underwear. Specialist SD struggled against him and continued to say no. Despite her protest, appellant pressed himself against SPC SD and penetrated her vulva with his penis. On 5 May 2015, SPC SD reported the incident to her social worker at the WTB.

Appellant was charged in Specification 1 of Charge II with a violation of Article 93, UCMJ, in that he "maltreated SPC SD, a soldier in transition and a person subject to his orders, by forcing her into a relationship and sexually assaulting her while appellant was cadre and a squad leader at the warrior transition brigade." Based on the language of the charged maltreatment specification, appellant was convicted of maltreating SPC SD in two different ways: (1) forcing SPC SD into a relationship, and (2) sexually assaulting SPC SD. The military judge, acting as the trier of fact, found appellant guilty of this offense by exceptions and substitutions, excepting the word "forcing" and substituting the word "pressuring."

On appeal appellant asserts that his conviction of maltreatment by "pressuring" a subordinate into a relationship is legally insufficient. We need not address the legal sufficiency of this conviction because we find that under the facts of this case, the conviction of maltreatment based on "pressuring" a subordinate into a relationship is factually insufficient.

This court reviews factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate review, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The offense of maltreatment requires proof of two elements: (1) the victim was subject to the orders of the appellant; and (2) the appellant was cruel toward, oppressed, or maltreated the victim. *Manual for Courts-Martial, United States* (2012 ed.) (*MCM*) pt. IV, ¶ 17.b. Acts constituting a maltreatment offense are defined as follows:

4

The cruelty, oppression, or maltreatment, although not necessarily physical, must be measured *by an objective standard.* Assault, improper punishment, and sexual harassment may constitute this offense. Sexual harassment includes influencing, offering to influence, or threatening the career, pay, or job of another person in exchange for sexual favors, and *deliberate or repeated* offensive comments or gestures of a sexual nature.

*MCM*, pt. IV, ¶ 17.c.(2) (emphasis added).

Before we begin our analysis, we note that in finding appellant guilty of maltreatment, the military judge sua sponte excepted the term "forcing" from the charged specification and substituted the term "pressuring."[5] We need not consider whether the military judge erred in doing so because even applying the substituted term we are not convinced appellant maltreated SPC SD by "pressuring" her into a relationship.[6]

In *United States v. Fuller*, our superior court found that consensual sexual activity between a noncommissioned officer (NCO) and a subordinate soldier did not form the basis for a maltreatment offense. *United States v. Fuller*, 54 M.J. 107 (C.A.A.F. 2000) (overruled on other grounds by *United States v. Miller*, 67 M.J. 385, 389 (C.A.A.F. 2009)). In arriving at their decision, the court considered that: (1) there was no evidence the NCO used his rank or position to pressure or persuade the subordinate soldier to engage in sexual activity; (2) there was no evidence that the NCO knew the subordinate soldier was "extremely intoxicated" at the time of the incident; and (3) there was no evidence that the subordinate soldier felt coerced or threatened by the NCO or his position as her platoon sergeant. *Fuller*, 54 M.J. at 111-12.

This case is similar to *Fuller* in that appellant's conviction for maltreatment by pressuring SPC SD into a personal relationship was based primarily on evidence of a consensual relationship between them. The evidence demonstrates that SPC SD willingly engaged in a personal off-duty relationship with appellant though she knew it was wrong from a policy standpoint. She readily accepted appellant's gifts and invitations to lunches, dinners, and other off-duty activities such as sporting events, but viewed their relationship as platonic.

---

[5] Rules for Court-Martial [R.C.M.] 918(a)(1) permits a fact finder to enter findings of guilty with exceptions and substitutions, so long as the exceptions and substitutions are not "used to substantially change the nature of the offense."

[6] The military judge did not define or explain the term "pressuring" when presenting his findings. For our analysis, we define the transitive verb "to apply pressure to: to bring influence to bear on." Webster's Third New International Dictionary 1795 (Philip Babcock Gove ed., Merriam-Webster Inc. 2002) (1961).

Appellant asked SPC SD to visit his apartment, to spend the night with him, and ultimately to be his girlfriend. Although she initially turned him down, she eventually accepted each offer to include being appellant's girlfriend. Specialist SD's reasoning for agreeing stemmed from her own desire not to hurt appellant, who she believed to be a nice guy. At trial SPC SD never alluded to appellant's rank or positon bearing on her consent to his advances or influencing the development of their personal relationship. Additionally, the record is devoid of any evidence from which we could infer that appellant leveraged either his rank or position in a manner that pressured SPC SD into an inappropriate personal relationship. Applying an objective standard, we are not convinced beyond a reasonable doubt that appellant pressured SPC SD into an inappropriate personal relationship. Therefore, we cannot affirm appellant's conviction of this form of maltreatment.

### B. Maltreatment by Sexually Assaulting SPC SD - Multiplicious

Next, we address whether we should affirm the remaining basis for the maltreatment conviction. Excepting the first type of maltreatment which we have determined we cannot affirm, the remaining Specification 1 of Charge II reads:

> In that [appellant], at or near Fort Belvoir, Virginia, between on or about 1 March 2015 and on or about 5 May 2015, did maltreat SPC SD, a soldier in transition and a person subject to his orders, by sexually assaulting her while said appellant was cadre and a squad leader at the Warrior Transition Brigade.[7]

While we find that appellant's conviction of maltreatment by sexually assaulting SPC SD is both factually and legally sufficient, the sexual assault charged as maltreatment is the same sexual assault of which appellant was convicted in Specification 1 of Charge I, in violation of Article 120, UCMJ. The government concedes and we agree that appellant's conviction of maltreatment by sexually assaulting SPC SD is multiplicious with appellant's conviction of sexually assaulting SPC SD. The two specifications are facially duplicative, meaning the factual components are the same. *United States v. Long*, ARMY 20150337, 2017 CCA LEXIS 131, at *4 (Army Ct. Crim. App. 28 Feb. 2017) (sum. disp.) (holding

---

[7] After finding the appellant guilty of Specification 1 of Charge II (maltreatment), the military judge found that the language "and sexually assaulting her" contained in the specification was an unreasonable multiplication of charges with Specifications 1 (sexual assault) and 2 (abusive sexual contact) of Charge I. The military judge stated after findings that he would merge the language contained in the maltreatment specification with Specifications 1 and 2 of Charge I, and he would not consider the language for sentencing. The military judge, however, did not dismiss the language in the maltreatment specification.

convictions of maltreatment and sexual assault multiplicious where the language of the charged specifications was facially duplicative).

When the government alleged that appellant maltreated SPC SD by sexually assaulting her, the government essentially incorporated the elements of sexual assault into its maltreatment specification.[8] In order to convict appellant of this type of maltreatment, the government had to prove beyond a reasonable doubt that appellant did in fact sexually assault SPC SD. The government did this by proving Specification 1 of Charge I, a sexual assault. Consequently, these two specifications are multiplicious for findings, the sexual assault offense being made into a lesser included offense of the maltreatment conviction. *See United States v. Armstrong*, 77 M.J. 465, 469 (C.A.A.F. 2018) (the CAAF reiterating the elements test, stating "[a]n offense is a *lesser included* offense of the charged offense if each of its elements is necessarily also an element of the charged offense.").

Concluding that appellant's conviction of maltreatment is multiplicious for findings with his conviction of sexual assault, we must set aside one of the convictions to remedy the error. The government has requested this court set aside and dismiss appellant's conviction of maltreatment. In the past, our superior court has permitted the government to make such an election. *See United States v. Palagar*, 56 M.J. 294, 296-297 (C.A.A.F 2002); *United States v. Frelix-Vann*, 55 M.J. 329, 333 (C.A.A.F. 2001); and *United States v. Cherukuri*, 53 M.J. 68, 74 (C.A.A.F. 2000).[9] Consistent with our superior court's guidance, we grant the government's request in our decretal paragraph.

---

[8] The term "sexual assault" has more than one operative meaning within the Army. As a matter of policy, the term sexual assault includes rape, nonconsensual sodomy (oral or anal sex), indecent assault (unwanted, inappropriate sexual contact or fondling), or attempts to commit these acts. *See* AR 600-20 ¶ 8-2. Sexual assault is also a named offense under Article 120, UCMJ with statutorily prescribed elements. *See MCM*, pt. IV, ¶ 45.a.(b). Here, the parties do not dispute that the language "sexually assaulting" refers to the named offense under the UCMJ.

[9] Appellant acknowledges that when faced with multiplicious convictions, the Court of Appeals for the Armed Forces (CAAF) and this court have historically permitted the government to elect which multiplicious specification to dismiss, but asserts that we should not allow the government to make that choice in light of the CAAF's decision in *Fossler*. 70 M.J. 225 (C.A.A.F. 2011). We fail to understand how *Fosler*—an opinion concerning the necessity of the terminal element in pleading an Article 134, UCMJ offense—informs our analysis of which remedy to employ when convictions are multiplicious. We reject appellant's suggestion that we should dismiss the sexual assault conviction in favor of the maltreatment conviction.

*C. Obstruction of Justice - Factually Insufficient*

We last turn to whether appellant's conviction of obstruction of justice is factually sufficient. This offense stems from appellant's inappropriate relationship with another WTB trainee, SPC SV. During the summer of 2014, appellant and SPC SV engaged in a romantic relationship. After the relationship ended a few months later, SPC SV reported to local civilian police that appellant had sexually assaulted her in early September of 2014.

When local police interviewed appellant on 15 November 2014, he had already deleted text messages between he and SPC SV that may have been relevant to the investigation. After waiving his Miranda rights, appellant admitted to having been in a relationship with SPC SV but denied sexually assaulting her. Appellant told local police he communicated via text message with SPC SV. When asked to provide evidence of these communications, appellant told civilian law enforcement that they would have to obtain his phone records because he had deleted the text messages from his phone. Appellant explained that he deleted the text messages with SPC SV because he was worried about the Army discovering their prohibited romantic relationship.

In January of 2015, Army Criminal Investigation Command (CID) interviewed appellant about the alleged sexual assault of SPC SV. During the interview, appellant told CID agents that he communicated with SPC SV on his phone via text message and that these communications were ongoing while they were dating. Based on this information and pursuant to a search authorization, CID seized appellant's phone on 11 February 2015.

A CID senior digital forensic examiner conducted a full digital forensic examination (DFE) of appellant's cell phone. The examination indicated appellant's cell phone had been operational since the beginning of 2014. The examiner testified that 256 of 262 text messages contained on the phone had been manually deleted. The examination, however, was unable to establish when any of the 256 deletions occurred.

From these events, appellant was charged with obstruction of justice, in violation of Article 134, UCMJ. As charged by the government, The Specification of Charge III required proof, beyond a reasonable doubt, that appellant, between on or about 10 February 2015 and 11 February 2015, wrongfully impeded an investigation by deleting text messages off his phone. *MCM*, pt. IV, ¶¶ 96.b.(1)–(3). In appellant's *Grostefon* claim, he contends that his conviction for obstruction of justice should be set aside as it is factually insufficient. We agree.

The government did not offer sufficient evidence to establish that any of the 256 deleted text messages were deleted during the charged time period. The CID

digital forensic examiner could not say when any of the 256 text messages had been deleted. The government's reliance on appellant's statements to civilian law enforcement is ill-placed. By appellant's admissions at his 15 November 2014 civilian law enforcement interview, he deleted the text messages at issue sometime before the interview. Thus, the deletions must have occurred at least almost three months prior to the time period charged in the obstruction specification and well before military law enforcement expressed any interest in appellant's relationship with SPC SV.

As our superior court has held, "exceptions and substitutions under R.C.M. 918(a)(1) (2016 ed.), may not be made at the appellate level." *United States v. English*, 79 M.J. 116, 119 (C.A.A.F. 2019). As such, this court cannot except or substitute language from a specification in such a way that creates a broader offense than that charged at trial. *Id.* at 120. Because we are precluded from expanding the charged time period to encompass appellant's admitted act of deleting text messages sometime prior to 15 November 2014, we cannot affirm his conviction for obstruction of justice.[10]

## CONCLUSION

Having considered the entire record, the findings of guilty of Specification 1 of Charge II, Charge II, The Specification of Charge III, and Charge III are SET ASIDE and DISMISSED. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence in this case, and do so after a thorough analysis and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986). A court of criminal appeals must "assure that the sentence is appropriate in relation to the affirmed findings of guilty, [and] that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed." *Sales*, 22 M.J. at 307-08 (quoting *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A. 1985)). "If the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least

---

[10] Even if we were to conclude that appellant's acts of deleting text messages prior to 15 November 2014 fell within the much later charged time period and that such a finding was not a fatal variance, we could still not affirm the finding of guilty. The government failed to present sufficient evidence that appellant's act of deleting the text messages was done with the specific intent to impede an investigation. Appellant admitted to civilian law enforcement that he had a general concern for his Army career resulting from his prohibited intimate relationship with SPC SV. However, there is no evidence from which this court can be convinced beyond a reasonable doubt that appellant was aware of any ongoing or pending investigation which he intended to impede by deleting text messages.

a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *Sales*, 22 M.J. at 308.

The dismissal of Specification 1 of Charge II (maltreatment) reduces appellant's exposure from forty-three years' confinement to forty-two years. Yet, the underlying facts and extenuation from the gravamen offenses of sexual assault and abusive sexual contact of a subordinate remain substantially the same.

The dismissal of The Specification of Charge III (obstruction of justice) further reduces appellant's exposure from forty-two years' confinement to thirty-seven years. While the gravamen offenses are sexual offenses victimizing a junior soldier, obstruction of justice is an offense which presents a completely different and unique kind of harm. "The essence of the offense denounced . . .is the obstruction or interference with the administration of justice in the military system." *United States v. Long*, 6 C.M.R. 60*, 65, 1952 CMA LEXIS 501* (1952). Appellant's adjudged sentence reflects, in part, that his behavior presented that unique harm. As we set aside and dismiss his conviction for obstruction of justice, we recognize that his behavior did not obstruct or interfere with the administration of justice in the military system, despite his other convictions.

The remaining offenses are of the type with which this court has experience and familiarity, and can reliably determine what sentence would have been imposed at trial. Also weighing in favor of this court's ability to reassess appellant's sentence is the fact that he chose to be sentenced by a military judge.

Upon consideration of the entire record and appellant's conduct, we affirm only so much of appellant's adjudged sentence as provides for a dishonorable discharge, confinement for four years, and a reduction to the grade of E-1. We are confident that based on appellant's remaining convictions, a military judge sitting as a general court-martial, would have imposed at least the reduced sentence we now affirm. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c), and 75(a).

Senior Judge ALDYKIEWICZ and Judge WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10